(110 So. 104)

No. 27956.

### COMEGYS v. SHREVEPORT KANDY KITCHEN (MARTEL, Intervener).

### In re COMEGYS.

(Oct. 5, 1926.)

*(Syllabus by Editorial Staff.)*

Chattel mortgages ⬥138(3)—Lessor's lien for rent accruing on tenant's holding over after expiration of lease for years primes mortgage of fixtures executed before term expired (Civ. Code, art. 2689).

Where lessee executed mortgage on fixtures prior to expiration of lease for years, and continued in possession after expiration of term, paying same monthly rent, lessor's lien for rent which accrued after expiration of original term primed the mortgage, since original lease was continued by tacit reconduction, under Civ. Code, art. 2689.

Certiorari to Court of Appeal, Second Circuit.

Suit by John M. Comegys against the Shreveport Kandy Kitchen, wherein Fred Martel intervened. Judgment for plaintiff and intervener against defendant, and for plaintiff against intervener was reversed in part by the Court of Appeal on intervener's appeal, and plaintiff applies for certiorari or writ of review. Judgment of Court of Appeal set aside, and judgment of district court reinstated and made final.

Dickson & Denny, of Shreveport, for applicant.

Herndon & Herndon, of Shreveport, for intervener.

BRUNOT, J. John M. Comegys leased the premises known as 719 Texas street, in the city of Shreveport, La., to the Shreveport Kandy Kitchen, a business conducted under that name but owned and operated by G. F. Eltife. Before the expiration of the lease Eltife executed and recorded a chattel mortgage in favor of Fred Martel upon the property and fixtures he had placed in the leased premises. After the expiration of the lease Eltife continued to occupy the property at the same monthly rental. He paid the rent for the two months succeeding the expiration of the lease, but for three months thereafter he defaulted in his payments, and plaintiff sued for the sum due and provisionally seized all of the debtor's property found on the premises. Fred Martel intervened, alleged that the rent sued for accrued subsequent to the expiration of the lease and subsequent to the recordation of his chattel mortgage upon the debtor's property, and therefore his privilege, as mortgagee, upon the property seized, was superior to the privilege asserted by the plaintiff.

The learned trial judge held that when the lease expired and the lessee continued to occupy the premises at the same monthly rental, what is known as reconduction resulted, and the original lease, with the term thereof

changed, by operation of law, from two years to a monthly lease, was continued for an indefinite time, terminable, at the option of the lessor, by service upon the lessee of a notice *to vacate.* Judgment was therefore rendered in favor of the plaintiff and intervener and against the defendant for the amounts of their respective claims, and in favor of the plaintiff and against the intervener, subordinating the lien of the intervener, as the holder of the chattel mortgage, to the plaintiff lessor's lien.

From this judgment the intervener appealed. The Court of Appeal reversed the judgment in part. It decreed that the lien of the mortgagee was superior in rank and primed the plaintiff's lien and privilege for rent accruing after the expiration of the lease. A rehearing was refused, and plaintiff thereupon applied to this court for certiorari or writ of review. The writ issued, and the record is now before us.

The sole question presented is whether or not the chattel mortgage became effective at the date the lease expired and, from that date, was superior in rank to the privilege of the landlord upon the property of the tenant for the rent thereafter accruing.

Counsel for intervener contends that this question is directly and affirmatively answered by the Court of Appeal of Orleans in the case of Remedial Loan Society v. Fredrick Solis and Robert E. Trepagnier, Patrick J. Morris, Intervener, C. of A. Repts. vol. 1, 164, in which case the court held that:

"(1) A contract of lease which either party may terminate on giving 15 days' notice does not fix its duration, and under article C. C. 2685, is one by the month.

"(2) Holding over after the expiration of each month creates a tacit reconduction from month to month and a new contract for each month.

"(3) A chattel mortgage yields a preference to a contract of lease and to every tacit reconduction thereof made prior to recordation of the amount of mortgage, but enjoys a pri-

ority over every lease or tacit reconduction made subsequent thereto."

Counsel for plaintiff differentiates the cited case from the case at bar. The only difference is that in one case there was a month to month lease; in the other the original lease was for two years, but this lease had expired and thereafter the occupancy of the premises was held under a tacit reconduction from month to month. Counsel for plaintiff concedes that the principle of law involved is the same. The Orleans Court of Appeal specifically held that a tacit reconduction from month to month creates a new contract for each month, and that a chattel mortgage primes a lease or tacit reconduction thereof made subsequent to the recordation of the mortgage.

In the case of Lyons v. Clark Warehouse the Court of Appeal of the First circuit held that a chattel mortgage merely confers a privilege, while the lessor has not only a privilege but a pledge, with the right to retain the thing subject to the pledge until he is paid. In the case of Bernhardt v. Sandel, the Court of Appeal of the Second circuit held that a chattel mortgage, of record before the lessor's privilege attached, was superior to that privilege. Both of these cases may be found in Loyola Law Journal, vol. 4. In the case of Youree v. Limerick (Pappas, Intervener) 157 La. 39, 101 So. 864, 37 A. L. R. 394, Justice Rogers, the organ of the *court,* after quoting the pertinent part of section 4 of Act No. 198 of 1918, the Chattel Mortgage Act, said:

"The Court of Appeal in subordinating the plaintiffs' claim to that of the third opponent, interpreted this provision of the statute as intending to give a prior recorded chattel mortgage superiority in rank over a lessor's lien arising *subsequently* thereto. Its appreciation of the law is correct, but its application thereof to the present issue is incorrect. The statute, in express terms, provides that the chattel mortgage lien 'shall be superior in rank to any privilege or lien arising subsequently there-

to.' No qualification nor exception is admitted. Clearly, then, the words 'any privilege or lien' include the lessor's lien and privilege. In the case of Lyons v. Clark Warehouse & Improvement Co., referred to. supra, the Court of Appeal for the First circuit, in construing the quoted provision of the statute, held that it applied only to ordinary liens and privileges and not to the lessor's security for his rent, which is of a higher nature than a mere privilege carrying with it the right of pledge and retention. The answer to this argument is to be found in the recognition of the fact that the right of retention is merely an ancillary and remedial right. The law confers it upon the lessor for the purpose of adding to his security and of facilitating the enforcement of his privilege. The existence of the auxiliary right of retainer may make the privilege more effective, but it, nevertheless, retains its character of a privilege without advancing in rank. * * * This distinction was recognized and applied by the Court of Appeal for the parish of Orleans in the case of Roses v. Siggio, No. 7904 of its docket, decided May 17, 1920. The issue involved there was whether the lien and privilege of a workman and repairman, with the right to detain the article on which he had worked, took precedence over a chattel mortgage executed prior thereto. The court held that it did not. The organ of the court was Judge St. Paul (now one of the Associate Justices of this court)."

While the original opinion in the Youree Case was handed down by Division A, the whole court had the case before it on the application for a rehearing, and, as a rehearing was granted merely to correct "an error in the statement of facts made in our original opinion," the legal conclusions announced therein were approved by the whole court and settled the jurisprudence of the state with reference to the priority of a chattel mortgage over any other lien or privilege upon the property subject to it, arising subsequent to the recordation of the mortgage.

But, in the case now before us, it is contended, and the district judge held, that the old lease was continued by what is known as reconduction, or operation of law; that the lessee's retention or possession of the premises after the conventional lease expired had the effect of continuing that lease in full force and effect except as to the terms thereof. The learned district judge says:

"Under article 2689, where two parties enter into a contract of lease for a definite term, they do so with a full realization (legally speaking) that the law writes into that very lease the provision that that very lease shall continue in force and effect, after the expiration of the term agreed upon, for an indefinite time, saving to the parties the right to put an end to it on the expiration of any month. This being true, then the very moment the chattels are placed in the leased premises under the term lease, the lessor's lien attaches not only for the term specified in the lease but for an indefinite term thereafter. And one taking a chattel mortgage on the property in the leased premises, during the existence of the term lease, is legally bound to know that the lessor's lien rested against the same property for whatever rent might become due in the future so long as the lessee remained in the same premises without executing a new lease. It is true that the lessor and lessee in this case could not have entered into any conventional renewal of the old lease, or any new lease, and thereby cut off the rights of the holder of the chattel mortgage, and it might well be argued that what they could not do by agreement, they cannot do as a result of the law. This would be correct if the law wrote into their contract this provision at the expiration of the term lease, but the law does not do that, but writes it into their contract at the very beginning, and every person, dealing thereafter with the lessee must do so with this in view. We think a reconducted lease is not a new lease or even a renewed lease, but is a continuation of the old lease, and in this particular case when the fixtures were placed in the leased premises, the lessor's lien attached for all rent to become due in the future, and therefore primed the chattel mortgage. Counsel for intervener has cited article 2690 to show that the lien did not attach except for the specific term of the lease. This article provides that the security which may have been given for the payment of the rent shall not extend to the reconduction period. This plainly refers to any conventional security that may have been given and does not refer to legal security such as the lessor's lien."

In answer to the cogent and persuasive reasoning of the district judge, the Court of Appeal says:

"The conventional lease expired at midnight on December 31, 1924, and at that moment all the right and privileges of the lessor under that lease expired also, except for the rent which became due under it. One moment after the conventional lease expired there was no lease on the property and the landlord had no privilege on the property then in the leased premises, except for the payment of rent already accrued. The lessee's occupation of the premises thereafter under reconduction constituted a new lease for each month. Whatever privilege the landlord had on the chattels in the premises for his rentals under the reconducted or new lease accrued subsequently to the expiration of the old lease."

The court then quoted C. C. art. 2689, and in support of its conclusions it gives the following reasons:

"The law creates a presumption of a continuance of the lease only in case the landlord permits the tenant to occupy the premises for one week subsequent to the expiration of the old lease. It therefore follows that during the period of the week immediately following the expiration of the lease the landlord could have evicted the tenant without notice, for the Code provides that notice must be given only if the lease tenant remained a week, and the tenant could, during the same period of time vacate the premises without notice. There is no presumption of continuance of the lease unless the landlord permits the tenant to remain a week. During that week there is no tie, either conventional or legal, between the landlord and the tenant. In the case at bar, the conventional lease expired on December 31, 1924. For a period of one week immediately thereafter there was no lease—the old one had expired and there was no presumption of a continuance under article 2684 of the Code. There was therefore no tie, either legal or conventional, between the parties during this time."

The fallacy of this reasoning strikes us as apparent. Article 2684 of the Code merely establishes a period of abeyance during which time either party to the contract may consider it at an end and act accordingly, but if neither so acts within that time the original contract is continued from month to month, terminable at the option of either party to it by simply giving the required notice. It is not a new contract or a renewal of the old contract; it is merely a tacit reconduction of the original contract with the term thereof changed, by operation of law, from a two-year lease to a monthly lease, and the same tacit reconduction takes place from month to month during the tenant's occupancy of the premises under those conditions. When neither party to the contract exercises his option to terminate the lease within one week after the expiration of the term stated therein, there arises a legal presumption that the lease is continued. Article 2689 of the Code is as follows:

"If the tenant either of a house or of a room should continue in possession for a week after his lease has expired, without any opposition being made thereto by the lessor, the lease shall be presumed to have been continued and he cannot be compelled to deliver up the house or room without having received the legal notice or warning directed by article 2686."

The foregoing article has been interpreted to mean that a tacit reconduction continues the lease from month to month. Dolese v. Barberot, 9 La. Ann. 352; Geheebe v. Stanby, 1 La. Ann. 17. Murrell v. Lion, 30 La. Ann. 255.

In this case the lessee occupied the premises without objection or protest on the part of the lessor for several months after the term of the conventional lease expired. He paid the rent for two months, but thereafter defaulted in his payments, and this suit and seizure followed.

For the reasons stated, we are of the opinion that the judgment rendered in this case by the district judge is correct and that it should have been affirmed. It is therefore ordered and decreed that the judgment of the Court of Appeal, Second Circuit, which subordinates the plaintiff's lessor's privilege for rent to the lien under the chattel mortgage in favor of the intervener be avoided and set aside, and that the judgment as rendered in the district court be reinstated and

made the final judgment of the court. It is further ordered and decreed that the district court costs be paid by the defendant, the Court of Appeal costs to be paid by the plaintiff, and the costs of this court be paid by the intervener.