**WEAKS SUPPLY CO., Limited, v. WERDIN et al. (M. KAPLAN & SON, Intervener).**

No. 4528.

Court of Appeal of Louisiana.
Second Circuit.
April 28, 1933.

McHenry, Montgomery, Lamkin & Lamkin, of Monroe, for appellant.

Madison, Madison & Fuller, of Monroe, for appellee.

MILLS, Judge.

The facts, issues, and findings in this case, as stated in the able, written opinion of the trial judge on application for rehearing, are:

"Some time prior to the month of December, 1929, and prior to December 19, 1930, M. Kaplan & Son leased and rented to F. R. Kalil the premises known as 901 De Siard street, Monroe, La., by verbal agreement. The premises were leased at a monthly rental of $100, with no definite time having been agreed upon for the duration of the lease contract. The said premises were leased and used for the purpose of operating a poultry and produce business under the trade name of Ouachita Produce Company.

"On December 19, 1930, F. R. Kalil and A. E. Werdin, who had in the meantime gained an interest in the business, granted a chattel mortgage on certain property located in and on the leased premises, to any future holder of the notes described therein, of which Weaks Supply Company, Limited, plaintiff herein, is now the owner.

"On July 28, 1931, Weaks Supply Company, Limited, by executory process, foreclosed the chattel mortgage and the notes described therein. M. Kaplan & Son, on August 22, 1931, intervened as third opponents in the said suit, claiming a prior lien on the property found on the leased premises by virtue of a lessor's privilege.

"In the meantime, on August 3, 1931, M. Kaplan & Son filed suit against F. R. Kalil for rent due, and on September 4, 1931, obtained judgment.

"The evidence on the trial of the case disclosed that although the original monthly rental was $100, it was reduced to $80 by verbal agreement some time after the recordation of the plaintiff's chattel mortgage. The evidence also revealed that the third opponent's rent claim matured after the recordation of the chattel mortgage.

"There was judgment in favor of the plaintiff and the third opponent filed a motion for a rehearing.

"The case, as urged by counsel, presents the following questions:

"1. Whether the lease, which had for its duration no fixed time, was one continuous contract, thereby preserving the lessor's privilege from month to month, or whether each month constituted a new contract, thereby giving the lessor a privilege only to the extent of the rent for the particular month.

"2. Whether the reduction in the rent after the recordation of the plaintiff's chattel mortgage constituted a new lease contract, thereby giving the recorded chattel mortgage priority over future rent claims of the lessor, or whether the reduction was merely a modification of an existing contract.

"Section 4 of Act No. 198 of 1918, provides as follows: 'That every mortgage shall be a lien on the property mortgaged from the time same is filed for recordation which filing shall be notice to all parties of the existence of such mortgage and said lien shall be superior in rank to any privilege or lien arising subsequently thereto.'

"In answer to the first proposition, it may be stated that the lease contract continuing over a period of months, but having no fixed time for its duration, constituted one continuous contract.

"In Comegys v. Shreveport Kandy Kitchen (Martel, Intervener), 162 La. 103, 110 So. 104, 52 A. L. R. 931 (1926), a case similar to the one now under consideration appeared. In that case the lease originally had for its duration a definite period of time. After the lapse, however, of this definite period of time, the parties continued in possession of the premises without agreeing upon a new contract. During the existence of the lease for a definite term a chattel mortgage had been given on the property located in and on the leased premises, and the holder of the chattel mortgage claimed priority over the rent claim of the lessor which had accrued after the expiration of the original term. The Supreme Court held, however, that the lease continued by tacit reconduction on a month to month basis after the original term had expired, and that the month to month arrangement was a continuation of the old lease and not a creation of a new one.

"The facts in the Comegys Case, supra, are different from those of the present suit, but not so in any material way. The lease in the Comegys Case had originally for its duration a fixed period of time agreed upon by the parties at its inception. In the case now under consideration, there was never any definite time agreed upon by the parties, but there having been no fixed time agreed upon, that period of time was fixed by operation of law at one month. Louisiana Revised Civil Code, art. 2685. After the lapse of this one month, the lease continued from month to month by tacit reconduction just as in the Comegys Case. Louisiana Revised Civil Code, art. 2686. The only difference was that in one case the original term of the lease was fixed by an agreement of the parties, and in the other it was fixed by operation of law.

"Counsel for the plaintiff has cited and urged that the case of Remedial Loan Society v. Solis & Trepagnier, Morris, Intervener, 1 La. App. 164 (1924), sustains the plaintiff's contention.

"In that case the lease had no fixed period of time for its duration and the parties operated under a month to month arrangement. In a contest between the lessor and the chattel mortgagor for priority, the court in holding in favor of the chattel mortgagor stated: 'Holding over after the expiration of each month creates a tacit reconduction from month to month and a new contract for each month.'

"The above ruling, without question, sustains the plaintiff's contention; but in view of the decision in the Comegys Case, supra, this court is not prepared to say that the Remedial Loan Society Case represents the law in Louisiana to-day; the Remedial Loan Society Case having been decided prior to, cited, and taken into consideration by, the court in the Comegys Case. Unless the view is taken that the cases may be distinguished on the ground that in one there was a month to month lease with no definite original term, and in the other a month to month lease, but having for its duration an original definite term which had expired, the Remedial Loan Society Case has been overruled. In the opinion of this court the cases express contrary views, and the above possible distinction is not sound.

"Article 2686 of the Louisiana Revised Civil Code, provides as follows: 'The parties must abide by the agreement as fixed at the time of the lease. If no time for its duration has been agreed on, the party desiring to put an end to it must give notice in writing to the other, at least ten days before the expiration of the month, which has begun to run.'

"From the very wording of this codal provision the contract of lease which has no fixed time for its duration continues until it is put at end by notice as provided for in the

article. If, therefore, the lease is not terminated in compliance with the law, it must continue in full force and effect until so terminated.

"In answer to the next issue involved in the case at bar, it is this court's opinion that the reduction in the monthly rental after the recordation of the plaintiff's chattel mortgage did not have the effect of creating a new lease, but was merely a modification of the old and existing contract.

"It is well settled under the ruling of the court in Bernhardt v. Sandel, 3 La. App. 139 (1925), that where a chattel mortgage is placed on property after it has been moved into leased premises, and thereafter, the first lease having expired, a new lease is made by an agreement between the parties, the chattel mortgage primes the lessor's lien under the new lease which was created after the chattel mortgage was recorded. This ruling, however, has no application to a case in which an existing contract of lease is merely modified.

"That a change in the monthly rental of leased property does not thereby destroy the original lease and create a new contract, but merely modifies the existing lease, is supported by the case of Haines v. Elfman, 235 Pa. 341, 84 A. 349 (1912), where the Supreme Court of Pennsylvania held: 'A modification of a contract of letting in the single particular of the amount of rent to be paid may be made without varying the other conditions contained in the lease. Such a change is not of necessity, either in law or in fact, an abandonment by either party of any of his rights under the contract as drawn.'

"For the reasons above assigned, it is ordered that a rehearing be granted."

From a judgment in favor of third opponent in accordance with the opinion, plaintiff alone appeals.

As the opinion is amply supported by the cited cases, except as to the finding that a reduction in the rent of a lease continued by reconduction from month to month is merely a modification of an existing contract and not a new lease, we will limit this opinion to a consideration of that question.

The pertinent provisions of the Revised Civil Code are as follows:

Article 2670. "To the contract of lease, as to that of sale, three things are absolutely necessary, to-wit: the thing, the price, and the consent."

■ Without a fixed price the agreement lacks an essential ingredient to constitute a contract of lease. Article 2672, Revised Civil Code. Jorden v. Mead, 19 La. Ann. 101; Haughery v. Lee, 17 La. Ann. 22; University Pub. Co. v. Piffet, 34 La. Ann. 602; Maestri v. Board of Assessors, 110 La. 521, 34 So. 658.

Then when by agreement the price is changed, we have a new price and a new consent; the only essential feature remaining the same being the occupancy of the thing.

■ It is too well settled to require citation that occupancy alone will not imply the relation of lessor and lessee.

The provisions of the Revised Civil Code as to reconduction are:

Article 2684. "The duration and the conditions of leases are generally regulated by contract, or by mutual consent."

Article 2685. "If the renting of a house or other edifice, or an apartment, has been made without fixing its duration, the lease shall be considered to have been made by the month."

Article 2689. "If the tenant either of a house or of a room should continue in possession for a week after his lease has expired, without any opposition being made thereto by the lessor, the lease shall be presumed to have been continued, and he can not be compelled to deliver up the house or room without having received the legal notice or warning directed by article 2686."

Article 2686 requires that if no time for its duration has been agreed on, the party desiring to put an end to the lease must give written notice to the other at least ten days before the expiration of the month which has begun to run.

Article 2691. "When notice has been given, the tenant although he may have continued in possession, can not pretend that there has been a tacit renewal of the lease."

■ The presumed continuance of a lease by operation of the law from month to month, resulting from holding over without notice, is called a "tacit reconduction." The effect of such a continuance is not to constitute a new lease each month or even to renew the old one, but rather to continue the original lease. The effect is the same whether the original lease be for a term of years or from month to month. In each case the reconduction is from month to month. It is true that where there is a term lease, the reconduction changes the term. But consent as to the term is not one of the essentials required by the Code for a valid lease. Where the contract is silent as to term, it is fixed by operation of the law. Dolese v. Barberot, 9 La. Ann. 352; Geheebe et al. v. Stanby, 1 La. Ann. 17; Murrell v. Lion, 30 La. Ann. 255.

In each case after the reconduction the same principles of law apply.

In the leading case of Comegys v. Shreveport Kandy Kitchen, 162 La. 103, 110 So. 104, 52 A. L. R. 931, we find: "Counsel for plaintiff differentiates the cited case from the case at bar. The only difference is that in one case there was a month to month lease; in the other the original lease was

for two years, but this lease had expired and thereafter the occupancy of the premises was held under a tacit reconduction from month to month. Counsel for plaintiff concedes that the principle of law involved is the same."

The court apparently agreed with the concession. We can see no reason to distinguish between the two leases after the reconduction.

■■ The theory of reconduction is that the continuance of the lease is tacit and presumed. The moment when, by mutual consent and convention and not by operation of the law, there is a change in the terms of the lease, it immediately ceases to be tacit or presumed and becomes express and conventional. The tacit reconduction is at an end, as is also the original lease continued by the reconduction, and in its place is a conventional lease for a new price.

■ We therefore conclude that the trial judge erred in following the common-law authorities and holding that an agreed change in the monthly rental was a mere modification of an existing lease and did, in so far as the law governing a tacit reconduction is concerned, constitute a new lease.

This finding is in accord with our jurisprudence. Bernhardt v. Sandel, 3 La. App. 139; Kidd v. Terrel (La. App.) 145 So. 23, wherein it was held that a reduction in the rent terminated the tacit reconduction and constituted a new agreement.

In Thigpen v. Wall Printing Corporation (La. App.) 145 So. 714, it was held that the execution of a new written lease during the period of reconduction had the same effect.

■ Though it is admitted that in the case at bar the rent was changed subsequent to the recording of the chattel mortgage, the date of the change is neither alleged, proven, nor admitted. The privilege of the landlord would take precedence over that of the chattel mortgage up to the time of .the change. The landlord being a third opponent in the action, the burden is upon it to establish by competent evidence the existence and precedence of its lien. This it has done. By reconduction the lien continued. Plaintiff has proven that this priority ceased and its lien took precedence because of the chance in the rent, but it has not proved when this change took place. As third opponent's lessor's lien applied to the rent up to the date of change, that date is essential to a proper disposition of this case. It is accordingly remanded for the sole purpose of establishing the exact date of the change in the rent.